Mr. Justice SWAYNE
delivered the opinion of the court.
If the determination of this case depended upon the general principles'of jurisprudence, the result must necessarily be in favor -of the appellees. It is a settled rule of law that ihe beneficial interest of the cestui que trust, whatever it may be, is liable for the payment of his debts. It cannot be so fenced about by inhibitions and restrictions as to secure to it the inconsistent characteristics of right and enjoyment to the beneficiary and immunity from his creditors. A condition precedent that the provision shall not vest until his debts are paid, and a condition subsequent that it shall be divested and forfeited by his insolvency, with a limitation over to another person, are valid, and the law will give them full effect. Beyond this, protection from the claims of creditors is not allowed to go.*
According to these -principles the restrictions in the deed of Beal Basley as to the creditors of the appellants are wholly void.
But the case does not turn-upon these considerations.
Two other questions are presented, and our judgment must be determined by their solution.
One of these questions is, whether the appellees, who were complainants in the bills filed to reach the interests of the' *442 appellants in the property in question, are not concluded by the decree rendered in those cases by the Supreme Court of .Tennessee. The cases were consolidated in that court, and decided together. The bills were filed in the Chancery Court of Davidson County, and addressed to the presiding chancellor. They contained this averment:
“ From the foregoing statement of facts your honor will readily perceive that said James B. and John Nichol, Jr., are invested with at least a remainder interest in fee in said tract óf 808f acres allotted to them as aforesaid; that the legal title to said tract being in John Nichol, Sr., or his heirs, the'same is'not subject to execution at law:”
Hence the aid of á court of equity was invoked. The prayer of the bills was that the “ interest ” of the appellants in the property should be sold, and the proceeds applied to the payment of the judgments.
The chancellor decreed against the complainants, upon, the grounds, that the restriction in. the trust as to the liability of the property for the debt's of James B. and John Nichol was valid; that .the creditors could not compel the conveyance of the legal title when the beneficiaries themselves were not in a condition to demand it; and that “the provisions of the deed were within the purview of the act of' 1882;” and the property thus protected from the claims of the creditors.
The complainants appealed to the Supreme Court. That court held “ that said property is not liable for such debts and judgments of the complainants, and that the same may not be subjected'to the payment and satisfaction of said debts and judgments,” and the decree of the chancellor was affirmed. As regards the complainants in that case, who are defendants in this, the parties were the same, and the question to be determined was the same. But it is said that Beal Basley was living when that litigation was begun, and dead when this bill was filed. That Basley was living could have made no difference in the result of the former suits, and .cannot affect the bar arising from them in this suit. As' averred in the bill, the beneficiaries had a vested re *443 mainder in fee. Their right to the property was as perfect *'hen as it is now. Their estate was an equitable one, but alienable and descendible, and subject to be conveyed by the same instruments as a legal estate. It was not then vested in possession. The time of possession was dependent upon the termination of the life estate of Beal Basley. But this only lessened its value for the time being. Its liability to their creditors ivas not in the least affected. It is impossible that the Supreme Court of Tennessee should-have held otherwise, and the decree have proceeded upon a different view of the subject. The language of the decree repels the suggestion. ¥e cannot give any weight to an objection which assumes as its basis such a reflection upon that enlightened tribunal. The decree as to the property and questions here in controversy is res judicata, and it has every element of conclusiveness as to those who were parties to it.
Several defendants in this suit were not parties to that litigation, and hence are not bound by the decree.
This brings us to examine the second question presented for our consideration. It relates to the effect of the act of 1832, referred to by the chancellor in his decree.
The Supreme Court of Tennessee held that it had no power to subject stocks, choses in actions, or equitable interests, to the payment of j udgments at law. The legislature of the State thereupon passed the act in question.*
The first section declares that a bill may be filed “to compel the discovery of any bank stock, or other kind of stock, or any property, or thing in action, held in trust for him” (the defendant), “ and to prevent the transfer of any such stock, property, monej, thing in action, or the payment or delivery thereof to the defendant, except where such trust has been created by, or the fund has proceeded from, some person other than the defendant himself, and is declared by will duly recorded, or by deed duly proved and registered.”
The second section authorizes the court to decree payment of the judgment out of “any property,.stock, money, *444 or things in action, belonging to the defendant or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery.”
The fourth section provides that when service cannot be made at law, and a judgment cannot be obtained, and also where the demand is of a purely equitable nature, “ a court of equity shall have jurisdiction to subject legal and equitable interests in every species of stock and other property, with the exception hereinbefore stated, and also in real estate.”
The Supreme Court of the State decided, in the suits referred to, that this statute embraces trusts of real estate, and that it exempted the property in question from liability to the judgment creditors. There can be no doubt of the power of the legislature to pass the statute. Its wisdom and policy are considerations with which we .have nothing to do. Being a local statute and involving a rule of property, we adopt the construction which has been given to it by the highest judicial tribunal of the State.
This is decisive of the case as to those of the appellees who were not parties to the former suits.
The decree of the Circuit Court is reversed, and the ' cause will be remanded to that court with directions to enter a decree
In conformity to this opinion.

Session laws of 1832, p. 22; Ewing v. Cantrell, Meigs, 364.